# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**MICHAEL'S FINER MEATS, LLC,**

    **Plaintiff,**

vs.

Case No. C2-09-001
Judge Edmund A. Sargus, Jr.
Magistrate Judge Norah McCann King

**MICHAEL F. ALFERY,**

    **Defendant.**

## OPINION AND ORDER

This matter is before the Court for consideration of the parties' cross-motions for summary judgment, as well as Plaintiff's motion for preliminary injunction.[1] As previously indicated by the Court, the parties' motions for summary judgment are denied; and Plaintiff's motion for preliminary injunction is granted, with the modifications previously set forth in the Preliminary Injunction issued by the Court on January 12, 2009.

### I.

Michael's Finer Meats, Inc. ("Michael's Inc.") was engaged in the business of selling meats and seafood, primarily to "white-table," higher-end customers such as hotels, country clubs and caterers.[2] In June of 2005, Michael's Inc. was based in Columbus, Ohio and was owned by

---

[1] As reflected in the docket of this case, (1) the parties agreed to consolidate Plaintiff's motion for temporary restraining order with its motion for preliminary injunction; and (2) the Court has issued an Order denying the parties' cross-motions for summary judgment and a preliminary injunction, indicating that this Opinion would follow.

[2] The following facts are drawn from the affidavits of record and the testimony provided on January 12, 2009 during the hearing on Plaintiff's motion for preliminary injunction.

Michael Bloch. On June 30, 2005, Michael's Inc. hired Defendant, Michael F. Alfery, to be a sales representative for the area surrounding Pittsburgh, Pennsylvania. At the time of his initial hiring with Michael's Inc., Defendant signed an Agreement Not to Compete ("Agreement"). (Verified Compl., Exh. A.)

The Agreement defines the parties as "Michael F. Alfery" (later described as "the Employee") and "Michael's Finer Meats, Inc." (later described as the "Employer" or "Company"). The Agreement contains no assignment clause, nor any language that expressly indicates that the parties intended that the contract could be freely assigned.

As drafted, the Agreement prohibits Defendant, for a period of twelve months, from the following:

> [E]ither directly or indirectly, solicit[ing], obtain[ing] or accept[ing] orders for any products competitive with those of the Company; or (ii) becom[ing] employed by, or in any way aid[ing] or associat[ing] in any capacity with, any business competitor of the Company (any individual or entity which processes, sells or in any way deals in a product or products substantially similar to any of the Company's products) in any county in any state in which Employer has conducted business.

(Agreement, ¶ 1.)

Michael's Inc. was an Ohio corporation which was formed on October 1, 1964. In February, 2008, Michael's Inc. entered into a merger agreement with a Utah investment group and created Michael's Finer Meats LLC ("Michael's LLC"). A Certificate of Merger was filed with the Ohio Secretary of State on February 28, 2008. Defendant worked as an employee of Michael's LLC after the merger. Defendant's salary, territory, products, supervisors, systems and sales targets all remained the same after the merger.

After the merger, Michael Bloch maintained a minority ownership interest in Michael's LLC. During the pre-merger and post-merger periods, Michael Bloch, Vic Foreman and John Bloch had decision-making authority with regard to customer accounts and any decisions related to the sales team.

While Defendant worked for Michael's Inc. and then Michael's LLC, he served approximately twenty-two customers, the majority of whom were located in the Pittsburgh area. None of Defendant's customers had an exclusive purchasing relationship with Michael's Inc. or Michael's LLC. During his employment, Defendant learned of Plaintiff's pricing, products, customers, competitors, distribution and sales methods.

On November 7, 2008, Defendant resigned his employment with Michael's LLC and began working for C.A. Curtze Co., Inc. ("Curtze") as a sales representative. Curtze's offers a comprehensive product line which includes more than 17,000 items. Unlike Michael's LLC, meat and seafood are a very small portion of Curtze's product line. As an employee of Curtze, Defendant also may sell produce, poultry, frozen vegetables, spices, fryers, kitchenware, chemicals, dry goods, paper products, and other items.

Defendant testified that when he left Michael's LLC, he did not take any customer or price lists, or any other confidential trade information. He acknowledged that, since the time he left Michael's LLC, he has sold Curtze meat or fish products to two customers that he had serviced while working for Michael's LLC. Defendant admits that, if the covenant not to compete runs in favor of Plaintiff, then these sales violated its terms. Defendant testified that, even though he sold competing meat and fish products to his former customers, the vast majority of products he sold to these customers are not offered in Michael's LLC's product line. Defendant has also had

contact with three other former customers because they are his friends, but he has not solicited any Curtze products to these individuals.

## II.

### A.  Summary Judgment Motions[3]

Each party has moved for summary judgment on Plaintiff's breach of contract claim. Defendant asserts that he is entitled to summary judgment on Plaintiff's breach of contract claim because Plaintiff cannot establish the existence of a contract between Defendant and the newly created entity, Plaintiff, Michael's LLC, as a result of the merger. According to Defendant, no contract existed between the parties because the non-competition Agreement was not assignable from Michael's Inc. to Michael's LLC under the facts presented here, and, as such, Plaintiff's contract claim fails as a matter of Ohio law. Plaintiff contends that, by operation of Ohio Revised Code § 1701.82(A)(3), the Agreement between Michael's Inc. and Defendant became an asset that passed to Michael's LLC as a result of the statutory merger with Michael's Inc. For the reasons that follow, the Court finds that summary judgment is not appropriate for either party.

### 1.  Assignability of the Non-Compete Agreement

As set forth more fully below, in the absence of express consent by the parties, an assignment of a covenant not to compete *may* be valid. Not every agreement is automatically

---

[3]  The procedure for considering whether summary judgment is appropriate is set forth in Federal Rule of Civil Procedure 56(c), which provides:

> The judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

-4-

assignable, and no *per se* proscription against assignment of covenants not to compete exists in Ohio law. Assignment of non-compete agreements is neither presumed nor categorically precluded, notwithstanding the fact that a particular agreement is silent as to its assignability.

As an initial matter, the Court finds that Ohio Revised Code § 1701.82(A)(3) is not dispositive.[4] As applied here, this statute merely provides that all property interests held by Michael's Inc. passed to Michael's LLC. The statute does not address whether a particular contract was assignable from the outset. In other words, if the contract was, in its nature, one that was amenable to assignment, then the merger statute would have operated to pass this contract as an asset from the predecessor company to the new entity. Plaintiff's motion for summary judgment, based entirely on the premise that the Agreement automatically passed to the benefit of Michael's LLC by virtue of Ohio Revised Code § 1701.82(A)(3), is **DENIED**.

---

[4] Section 1701.82(A)(3) provides as follows:

(A) When a merger or consolidation becomes effective, all of the following apply:

\* \* \* \*

(3) The surviving or new entity possesses all assets and property of every description, and every interest in the assets and property, wherever located, and the rights, privileges, immunities, powers, franchises, and authority, of a public as well as of a private nature, of each constituent entity, and, subject to the limitations specified in section 2307.97 of the Revised Code, all obligations belonging to or due to each constituent entity, all of which are vested in the surviving or new entity without further act or deed. Title to any real estate or any interest in the real estate vested in any constituent entity shall not revert or in any way be impaired by reason of such merger or consolidation.

The analysis begins with *Rogers v. Runfola*, 57 Ohio St. 3d 5 (Ohio 1991). In *Rogers*, the Ohio Supreme Court addressed the issue of assignability of non-compete agreements, and found that, in the context of an asset transfer from a sole proprietorship to a newly-incorporated business, the covenants could be assigned. In *Rogers*, the employer assigned all the assets and liabilities of a sole proprietorship to a corporation, expressly including all rights and obligations under the employees' employment contracts. An employee asserted that she was not bound by the non-competition agreement because this type of contract could never be assigned. According the Ohio Supreme Court, the covenant not to compete could be assigned under the circumstances:

> This change had no effect on the ownership of the business. Runfola, [the employer], prior to 1977, was the sole proprietor and, thereafter, he became the sole director and stockholder of the business. Only the legal structure of the business changed, not the business itself. Equally important, Rogers [the employee] testified she knew the business had been incorporated as early as 1981 when she was made a vice president of the corporation and that the change had no effect on her duties or the daily operations. Therefore, because only the structure of the business changed and the fact that no additional burdens were placed on Rogers as a result of the incorporation, we find that the employment contract and covenant not to compete contained therein were properly assigned.

*Id*. at 7. Thus, *Rogers* makes clear that non-compete agreements are not *per se* unassignable. *Rogers*, nonetheless, compels an analysis of the facts of any particular case with respect to the changes in structure between the former and new businesses and additional burdens imposed on the employees' duties brought about by the by structure change.

In this case, Michael's Inc., a family-owned operation, sold its assets to an investment group, and merged with Michael's LLC in February, 2008. The owners of Michael's Inc. maintained an ownership interest in Michael's LLC. After the merger, management remained the same. Notwithstanding Defendant's impression, however, the Bloch family remained in charge

of day-to-day operations at Michael's LLC. The same individuals had, and continued to have, decision-making authority with respect to customer accounts and Defendants' job as a member of the sales team.

Moreover, the merger had no significant bearing on Defendant's work duties. Although Defendant claims that Michael's LLC reduced his available product line, the evidence demonstrates that only a small amount of product was discontinued due to slow sales, and that Michael's LLC continued to add and delete items from the inventory, as it had done prior to the merger.

Further, the evidence establishes that Defendant experienced no meaningful reporting burdens after the merger. Defendant contends that the Utah ownership group imposed several new burdens and requirements on him as a sales representative. Defendant averred that he was required to complete accounts receivable updates and to provide detailed information relating to his plans for growing his client base and his business with each client. The evidence at the hearing revealed, however, that the reporting requirements after the merger did not substantially change. Although there was a new form on which to report such information, before and after the merger, both Michael's Inc. and Michael's LLC required sale representatives to provide weekly planners and recaps, and to indicate their anticipated sales plans for the week. The new form required a listing of prospective new accounts that the sales representative intended to target over the next four weeks. Notably, nothing in Defendant's salary structure, his territory, his supervision or sales targets changed as a result of the sale of the business.

*Fitness Experience v. TFC Fitness Equipment, Inc.*, 355 F. Supp. 2d 877 (N.D. Ohio 2004), is instructive. In *Fitness Experience,* the plaintiff, a retail fitness store, contended that the

defendants were bound by non-compete agreements they had executed while employees of Exercare. *Id.* at 880. After Fitness Experience purchased the assets of Exercare, some managerial employees left the company to start their own fitness-equipment business. *Id.* at 884-85. Fitness Experience sued to enforce the employees' non-compete agreements which they had executed with Exercare. The parties cross-moved for summary judgment on the issue of whether the non-compete agreements the defendants had executed with Exercare were assignable to Fitness Experience. The court held the non-compete agreements were not assignable and thus unenforceable.

Beginning with an analysis under the Ohio Supreme Court's decision in *Rogers*, the court first recognized that, unlike *Rogers*, a clear change in ownership followed the sale of the business from Fitness Experience and Exercare. The court explained that, while *Rogers* mandated the conclusion that the agreement was not *per se* unassignable, "when a non-compete agreement does not expressly state whether or not it is assignable, Ohio courts do not presume assignability, as suggested by plaintiff, but rather carefully consider the intent of the parties and find a non-compete agreement to be assignable only under certain prescribed circumstances." *Id.* at 888. "When a non-compete agreement is silent about assignability, courts must give controlling effect to the intent of the parties which is primarily ascertained by determining 'whether the covenant employs words which indicate that assignment was contemplated and whether assignability is necessary to protect the goodwill of the business being sold.'" *Id.* at 889 (quoting *Blakeman's Valley Office Equip., Inc. v. Bierdeman*, 152 Ohio App. 3d 86, 92 (Ohio Ct. App. 2003)).

As to the intent of the parties in this case, the Agreement does not contain language indicating that the parties anticipated or prohibited assignability. Defendant testified that he did

-8-

not contemplate that the Agreement would be assignable. Defendant testified that, when he signed the non-competition agreement, he intended to stay with a family business, which is how he was employed before he came to Michael's Inc., and how Michael's Inc. was structured before the corporate merger. During the hearing, uncontradicted evidence was presented that the same family continued to run the business: Michael Bloch continued as CEO, while John Bloch continued as president. To this extent, the merger did not change Defendant's expectation that the covenant he signed ran in favor of a family business.

The Court also considers whether assignability is necessary to protect the goodwill of the employer who signed the non-compete agreement, in this instance, Michael's Inc. *See Fitness Experience*, 355 F. Supp. at 889-90 ("While it is unassailable that the assignability of the non-compete agreements serve to protect, to some extent, the good will of the business being sold, such a broad statement could be made in every single case.") To determine whether assignability of the non-compete agreement is necessary to protect Michael's Inc.'s goodwill, the Court considers "the nature of the business and [Defendant's] position in order to weigh this factor's effect on evincing the parties' intent regarding assignability." *Id.* (citing cases).

The Court concludes that this factor, too, weighs in favor of assignability. Defendant testified at the hearing that he was, in effect, the "face" of Michael's Inc. as it related to relationship with customers. Defendant had several key customers with whom he interacted, and responded to their issues individually. He was familiar with the company's pricing system and knew the distribution network. Defendant was the only employee with this knowledge as it relates to his particular accounts. He had developed these customers, and without him, the purchaser, Michael's LLC, could not maintain these close client-contacts. The non-compete Agreement,

therefore, had appreciable utility to the new entity, Michael's LLC.

Viewing all of this evidence together, the Court concludes that the language of the Agreement, the implied intent of the parties, and the likelihood that this Agreement would protect the goodwill of Michael's Inc., indicate that Michael's Inc. and Defendant intended that the Agreement would be assignable. Thus, Defendant has not established, as a matter of law, that the Agreement between himself and Michael's LLC was not assignable. Defendant's motion for summary judgment on this basis is accordingly **DENIED**.

### 2. Reasonableness

With respect to employment contracts, such as the Agreement not to compete presently at issue, the Court applies a "rule of reasonableness." The rule permits courts to determine what restrictions in a covenant not to compete would be reasonable between the parties. *Raimonde v. Van Vlerah*, 42 Ohio St. 2d 21, 25 (Ohio 1975). The rule permits courts "to fashion a contract reasonable between the parties, in accord with their intention at the time of contracting, and enables them to evaluate all the factors comprising 'reasonableness' in the context of employee covenants." *Id*.

> Among the factors properly to be considered are: the absence or presence of limitations as to time and space, whether the employee represents the sole contact with the customer; whether the employee is possessed with confidential information or trade secrets; whether the covenant seeks to eliminate competition which would be unfair to the employer or merely seeks to eliminate ordinary competition; whether the covenant seeks to stifle the inherent skill and experience of the employee; whether the benefit to the employer is disproportional to the detriment to the employee; whether the covenant operates as a bar to the employee's sole means of support; whether the employee's talent which the employer seeks to suppress was actually developed during the period of employment; and whether the forbidden employment is merely incidental to the main employment.

*Id.* (citations and quotations omitted). A covenant not to compete "will be enforced to the extent necessary to protect the employer's legitimate interests." *Id.* at 25-26. "A covenant restraining an employee from competing with his former employer upon termination of employment is reasonable if it is no greater than is required for the protection of the employer, does not impose undue hardship on the employee, and is not injurious to the public. Courts are empowered to modify or amend employment agreements to achieve such results." *Id.* at 26.

Here, the Court finds that the Agreement is over-broad to the extent Defendant is prohibited from selling products competitive to that of the Plaintiff in areas outside of Allegheny County, Pennsylvania. Consistent with the Court's entry of the Preliminary Injunction on January 12, 2009, the Court finds that the following revisions to the Agreement serve to protect the employer and impose no undue hardship on the employee. Paragraph 1 of the Agreement is modified as follows:

> 1. .... [F]or a period of twelve (12) months after termination of his/her employment for any reason . . . , Employee shall not (i) either directly or indirectly, solicit, obtain or accept orders for any products competitive with those of the Company, *within Allegheny County, Pennsylvania only*; or (ii) *engage in employment in which he solicits within Allegheny County, Pennsylvania, any product in competition with the Company at the time of his termination of employment.*

(Agreement; Court modifications in italics.) Under these terms, therefore, Defendant may not, directly or indirectly, engage in any sales or solicit sales, or assist anyone else employed by his new employer, Curtze Company, with respect to former customers to whom he provided service while employed by Michael's Finer Meats, LLC in Allegheny County, and may not, directly or indirectly, solicit sales, or assist anyone else employed by the Curtze Company, to solicit sales, to any customer of Michael's Finer Meats, LLC in Allegheny County, Pennsylvania as to product

lines Defendant previously sold while employed by Michael's Finer Meats, LLC. Defendant may continue to solicit sales on behalf of Curtze Company in Allegheny County of any product not provided by or in competition with those sold by Michael's LLC.

## B.     Motion for Preliminary Injunction

In considering a request for preliminary injunction, the Court considers each of the following factors: (1) the likelihood that the movant will succeed on the merits; (2) whether the movant will suffer irreparable harm without the injunction; (3) the probability that granting the injunction will cause substantial harm to others; and (4) whether the public interest will be advanced by issuing the injunction. *Lorillard Tobacco Co. v. Amouri's Grand Foods, Inc.*, 453 F.3d 377, 380 (6th Cir. 2006)(citing *Six Clinics Holding Corp., II v. Cafcomp Sys., Inc.*, 119 F.3d 393, 399 (6th Cir. 1997)). "In making its determination, the district court is required to make specific findings concerning each of the four factors, unless fewer factors are dispositive of the issue." *Id.* The foregoing are "factors to be balanced, not prerequisites that must be met. Accordingly, the degree of likelihood of success required may depend on the strength of the other factors." *In re DeLorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir. 1985). As set forth below, these factors, on balance, weigh in favor of issuance of a preliminary injunction.

### 1.     Likelihood of success on the merits

As set forth above, with respect to the application as it relates to the request to enforce the non-competition Agreement, Plaintiff is likely to prevail on the merits.[5]

---

[5]     The parties did not address, and the preliminary injunction does not relate to Plaintiff's claims of tortious interference with business relations or misappropriation of trade secrets.

-12-

### 2. Irreparable harm without the injunction

As part of the Agreement, Defendant acknowledged that a breach may cause irreparable injury for which there would be no adequate remedy at law. The Agreement, therefore, provides that Michael's LLC is entitled to preliminary injunctive relief. Notwithstanding the language of the Agreement, the Court finds that any breach by Defendant of the Agreement would cause irreparable injury to Plaintiff, including loss of business, customers and competitive advantage in the marketplace.

### 3. Harm to others

There is no harm to any third parties if the injunction is granted because only Michael's LLC and Defendant have a legal stake in the outcome of this case. Moreover, the injunction imposed by the Court does not cause undue harm to Defendant. He may still work for his present employer in and around his former territories. He is prohibited only from selling or soliciting goods that compete with those furnished by Michael's LLC for a limited period of twelve months.

### 4. Public interest

The public has a strong interest in the preservation of agreements and in preserving the orderly conduct of businesses. The Court finds that this factor also weighs in favor of preliminary injunctive relief.

### III.

For the foregoing reasons, Plaintiff's Motion for Summary Judgment is **DENIED**; Defendant's Motion for Summary Judgment is **DENIED**, and Plaintiff's Motion for Preliminary Injunction is **GRANTED** to the extent of the Court's previously issued Amended Preliminary Injunction.

IT IS SO ORDERED.

<u>  1-13-2009  </u>
DATED

EDMUND A. SARGUS, JR.
UNITED STATES DISTRICT JUDGE